# Michael T. Carr, Esq., PLLC

•*Counselor at Law*•
michael@michaeltcarr.com
16 Court Street, Suite 2901
Brooklyn, New York 11241
P: (718) 858 – 0227 • F: (718) 228 – 8584

---

March 24, 2015

*VIA ELECTRONIC FILING*

Hon. George B. Daniels
United States District Courthouse
500 Pearl Street
New York, New York 10007-1312

*Re: Dossou v. Reyer Parking, et. al. (13cv2800)*

Dear Honorable Sir:

This office represents Plaintiff Gallie Dossou (the "Plaintiff" or "Dossou") in the above-referenced action. This letter is Plaintiff's opposition to Defendant Reyer Parking Corp.'s ("Reyer") motion for summary judgment, filed on February 27, 2015.

## PROCEDURAL HISTORY

Plaintiff commenced the instant action under the FLSA and New York State Labor law for, *inter alia,* violations of both federal and state labor laws in connection with unpaid wages, overtime, spread of hours, and meal breaks.

The instant matter was original file against Reyer and Gerald Lieblich ("Lieblich") as the employers of Dossou. On May 17, 2013, Defendants Reyer and Lieblich filed a motion to dismiss the Complaint, or in the alternative, sought summary judgment. The Court ultimately denied the motion on December 12, 2013.

On October 31, 2013, after some initial discovery had been conducted, Plaintiff amended the complaint to add two (2) additional parties, FDD Enterprises, Inc. ("FDD") and Ali Dar ("Dar").

On March 18, 2014, after further discovery the Plaintiff agreed with Defendants to voluntarily dismiss Lieblich from the matter, leaving the Amended Complaint, which seeks damages from Defendants Reyer, FDD, and Dar.

On October 22, 2014, Plaintiff served all Defendants' attorneys in court with its first combined discovery demands. At conference held on October 22, 2014, the Court ordered discovery to close on January 30, 2015 and requested the parties appear for a conference on

January 29, 2015. Due to the Court's schedule, the conference was adjourned to January 30, 2015, however, the discovery deadline remained the same.

At the conference held on January 30, 2015, Defendants FDD and Dar's discovery was still outstanding; no responses had been served. At the conference, the Court ordered Mr. Robert Chapnick, Esq., counsel for FDD and Dar, to provide responses to Plaintiff on or before February 13, 2015. During this conference, the Court also set an aggressive schedule to deal with pretrial issues. The Court granted leave to Defendant Reyer Parking, Corp. to file a letter motion seeking summary judgment/dismissal from the action. The date for Reyer Parking, Corp. to file was set at February 27, 2015. This date was chosen contemplating that FDD and Dar would have produce discovery timely; however, this did not come to pass.

On February 19, 2015, counsel for Plaintiff sent an email to Mr. Chapnick to inquire as to the status of the responses; no reply was received. On February 23, 2015, Plaintiff called and spoke with Mr. Chapnick who indicated he was out of the country. He did not provide a time frame for when he could produce responses and asked that counsel for Plaintiff send an email. On February 25, 2015, counsel for Plaintiff emailed Mr. Chapnick another copy of the demands to ensure he had them and requested that he reply by March 4, 2015. As stated above, after a motion was filed Defendants produced their documents on March 18, 2015.

On March 9, 2015, Plaintiff filed a letter motion with the Court requesting the Court strike Defendants FDD and Dar's Answer for failure to comply with discovery. The Court issued an order directing Defendants to produce their responses to Plaintiff on or before March 17, 2015; however, the documents were not delivered until March 18, 2015.

In the interim, while Plaintiff was attempting to compel discovery from FDD and Dar, Reyer filed the instant motion for summary judgment and sanctions. Plaintiff requested a conference and an extension of deadlines for the instant motion, which was denied by the Court.

Plaintiff now submits the instant opposition to Reyer's motion seeking, *inter alia,* summary judgment and sanctions.

## **FACTUAL BACKGROUND**

In or about January 2011, Plaintiff began working for Defendants as a non-exempt valet and continuously worked for Defendants until or about March 6, 2013. Plaintiff's job description included working as a valet, parking cars, and attending the parking garage owned by Defendants located at 1872 East Tremont Avenue, Bronx, New York 10460 (the "Premises"). Plaintiff's duties were completely controlled by Defendants.

When Plaintiff applied for a job with Defendants, he was told he was working for "Reyer Parking." The job application produced by Defendants FDD and Dar in this matter does not specify the name of the company, which Plaintiff applied for. *See,* **EXHIBIT "A."** Plaintiff was instructed to answer the phone "Reyer Parking." The sign on the garage where Plaintiff worked says "Reyer Parking Corp." and has its license number indicated on the side of the building. *See,* **EXHIBIT "B."** The claim checks handed out by Plaintiff and other employees at the Premises read, "Reyer Parking Corp." *See,* **EXHIBIT "C."**

Plaintiff was required to work eighty-four (84) hours per week, at twelve hours a day, seven days a week. Defendant compensated Plaintiff at the rate of $350.00 per week. Plaintiff was allowed one vacation day per month. The hours which the Plaintiff was forced to work and at the rate of pay he was given is an extremely egregious violation of both the FLSA and the New York State Labor Laws. Simply stated, while the Plaintiff was employed by the Defendants, he had little time to do more than work and sleep.

Plaintiff was not paid for all hours worked as is required under Federal and New York law and not paid overtime compensation for all hours worked above forty (40) hours per week and above eight (8) hours per day. Defendants willfully failed to pay Plaintiff what they were legally obligated to pay under both Federal and State Laws. When Plaintiff complained to Defendants regarding his rate of pay, he was promptly discharged from Defendants' employ in retaliation.

Through the course of discovery Reyer has denied that it employed Plaintiff. This is despite the fact that upon information and belief the phones are being answered "Reyer Parking" by the employees who are employed at the parking garage; the fact that both Plaintiff and non-party Michael Mensah Abrampah have provided declarations stating that they worked for Reyer; the fact that there is an agreement between Reyer and FDD which both parties refuse to produce; and despite the fact that the sign and licensing information on the building read "Reyer Parking Corp."

## LIEBLICH'S TESTIMONY

The "facts" related to the Premises depend entirely on who is presenting the "facts." Lieblich testified that 1872 East Tremont Corp. ("1872") is the owner of the Premises and that Reyer holds a license to operate a parking garage at said Premises. Lieblich also testified that he had never heard of FDD until the Plaintiff commenced the instant action. Lieblich testified that 1872 had leased the Premises to non-party Peak Time Parking ("Peak") pursuant to an oral agreement for between approximately $20,000.00 and $25,000.00. Lieblich stated during deposition that Peak had permission to use Reyer's license and name in order to operate a parking garage at the Premises. Lieblich indicated that these permissions were also oral and no record existed reflecting this agreement. A true copy of Lieblich's testimony is annexed hereto as **EXHIBIT "D."**

## DAR'S TESTIMONY

The "facts" as given be Dar differ significantly than those given by Lieblich. Dar indicated that he leased the Premises directly from Lieblich pursuant to an agreement that he signed in Libelich's office in Manhattan. Dar also indicated that he signed a separate agreement. Dar indicated that he pays $15,000.00 a month in cash directly to Lieblich by personally delivering it to him at his office. Dar even gave the address of Lieblich's office, 56th Street in Manhattan. Dar also stated the he negotiated the lease directly with Lieblich and that the two (2) gentlemen signed the lease in each other's presence. Dar also stated during his deposition that he has a separate written agreement from Lieblich allowing him to use Reyer's license to operate a parking garage at the Premises. He states that he uses the name "Reyer Parking Corp." on his

claim checks and stamps in connection with the company. Dar goes on to say that he has never heard of 1872 before and does not know of the company.

Dar does admit that Plaintiff worked for him; however, claims that he only worked from October 2012 – March 2013, despite both Plaintiff and non-party witness Michael Mensah Abrampah testifying that he worked for the Defendants from January 2011 to March 2013. The time sheets produced by FDD and Dar clearly due not comply with the FLSA or New York Labor Law. A true copy of Dar's testimony is annexed hereto as **EXHIBIT "E."**

## CONFLICTING TESTIMONY

What is clear from the deposition transcripts of Lieblich and Dar is that one (or both) of these gentlemen is not telling the truth. There can be no other explanation for the extremely incongruent testimony. Lieblich testified that he has never heard of or met Dar before; however, Dar has a very specific recollection that they have at least two (2) written agreements between them which were executed at Lieblich's office. What is more curious is that Dar also testified to the fact he drops of his rent, in cash, to Lieblich's office in person.

Simply stated, it is difficult to know which testimony to credit. What is clear is that at the very least, according to the testimony of both Lieblich and Dar is that Reyer's name and license are being used at the Premises to operate a parking garage. Moreover, both Plaintiff and non-party Michael Mensah Abrampah have testified that they worked and work for Reyer, respectively.

Summary judgment is entirely inappropriate given the incredible amount of conflicting testimony produced in this matter. The jury must hear the live testimony of each party in this case so that they can credit or disregard the testimony of each witness called to testify.

## STANDARD OF REVIEW

Although the Defendant does not specifically state it, it appears that it is moving under FRCP 56. At the outset, Defendant's motion should be denied in its entirety for failing to identify the section of law under which it is moving the Court or citing to a case upon which it relies in connection with the applicable standards of summary judgment.

A district court may not grant summary judgment if a genuine issue of material fact exists. *Jenkins v. City of New York,* 478 F.3d 76, 89-91 (2d Cir. 2007). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. *L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law…' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Genuine issues of material fact exist with respect to Plaintiffs' claims, and the resulting liability of each defendant.

Defendant's motion for summary judgment overlooks the "irreconcilable conflicts between the parties' accounts of what happened" during the time of Plaintiff's employment and asks this Court to disregard well settled law prohibiting the Court, on a motion for summary judgment, from resolving factual disputes or making credibility determinations. *Douglas v. City of New York,* 595 F. Supp. 2d 333, 337 (S.D.N.Y. 2009). Accordingly, defendant's motion for summary judgment must be denied in its entirety.

It should also be noted that the Defendant has not complied with Rule 11(c)(2) of the FRCP and thus its motion for sanctions must also fail. Rule 11 states in pertinent part, "(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

Thus, as stated above, even if Defendant prevails on the instant motion, Defendant's motion for sanctions must fail due to the fact that it has not complied with Rule 11 of the FRCP nor has it alleged to have complied with Rule 11 as is required.

## ARGUMENT

STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the moving party must demonstrated that there is not genuine triable issue of fact for the Court to determine. The instant case has a clear and triable issue of fact as to who employed Plaintiff during the time complained of in this action. Reyer has offered no proof that it did not employ Plaintiff during the time complained of despite the fact that both Plaintiff and non-party Michael Mensah Abrampah have signed sworn statements stating that Reyer employed both gentlemen.

At first it should be noted that it is undisputed that the only person or entity, which holds a license to operate a parking garage at the Premises, is Reyer. Reyer holds a license to operate a parking garage pursuant to New York City Administrative Code (the "Code") Subchapter 17. The Code reads in pertinent part, "License not transferable. No license issued under the provisions of this subchapter shall be transferred or assigned to any person or used by any person, other than the licensee to whom it was issued, nor shall such license be used at any location other than the location stated in such license." NYCADC §20-325. Thus, the alleged agreement between Reyer and Peak or Reyer and FDD to allow one (or both) of the entities to use Reyer's license is unlawful. The only entity allowed to operate a garage at the Premises is Reyer.

THE FLSA & NEW YORK STATE LABOR LAW

According to the FLSA, the term "employer" is defined as follows: "'Employer'" includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S. Code § 203 (d). The New York State Labor Law has an almost identical definition for what constitutes an "employer." In sum, the Second Circuit has held "[j]ust as federal courts interpreting the 'suffer or permit' language have looked beyond common-law

agency principles in analyzing joint employment relationships, so too have New York courts." *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 78 (2d Cir. 2003).

The Second Circuit has taken a broad approach to this definition as to assure that parties that should be held responsible under the FLSA and New York State Labor Laws are in fact held responsible. "To determine whether a defendant is an 'employer' under the FLSA, the Court must examine the plaintiff's activities and decide whether the plaintiff and the defendant have an employer-employee relationship. This determination 'does not depend on 'isolated factors but rather upon the circumstances of the whole activity.' In particular, the court must consider the 'economic reality' of the parties' relationship on a 'case-by-case basis' in light of the 'totality of circumstances.' *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.") *Winfield v. Babylon Beauty Sch. Of Smithtown, Inc.* (EDNY 2015).

**The FLSA has been broadly interpreted to protect employees from corporations who use the "shell" company tactic as a means of avoiding liability**. Specifically, the Second Circuit in *Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003), held, "[h]owever, by limiting FLSA liability to cases in which defendants, based on the totality of the circumstances, function as employers of the plaintiffs rather than mere business partners of plaintiffs' direct employer, the test also ensures that the statute is not interpreted to subsume typical outsourcing relationships. The 'economic reality' test, therefore, is intended to expose outsourcing relationships that lack a substantial economic purpose, but it is manifestly not intended to bring normal, strategically-oriented contracting schemes within the ambit of the FLSA." *Zheng at 76*.

The Second Circuit has held **"'[T]he determination of the [employment] relationship does not depend on such isolated factors" as where work is done or how compensation is divided "but rather upon the circumstances of the whole activity.' *Rutherford,* 331 U.S. at 730, 67 S.Ct. 1473. Some early cases concerned managerial efforts to distance themselves from workers in an apparent effort to escape the FLSA's coverage."** *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2nd Cir., 2013) (emphasis added). Thus, the factors as laid out by the Defendant in its motion do not properly reflect the spirit of the FLSA as the FLSA is a fluid law subject to broad interpretation. The Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances"; we have "identified different sets of relevant factors based on the factual challenges posed by particular cases." *Barfield,* 537 F.3d at 141–42. *Id.*

"None of the factors used in any of these cases, however, comprise a 'rigid rule for the identification of an FLSA employer.' 'To the contrary, ... they provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.'" *Id.* (quoting *Zheng,* 355 F.3d at 75–76). Therefore, the Court is free to determine on a case by case basis who is an "employer" under the FLSA.

Due to the Defendants' conflicting testimony, the answers given by the Defendants cannot be credited. Simply stated, both Lieblich's and Dar's versions of the facts cannot stand in the face of each other. What is complained of in the instant matter; however, is that the Plaintiff

can satisfy many of the factors in *Bonnette* and *Zheng*. For example, due to the fact that Reyer holds the license to operate a parking garage Reyer has the ability to affect almost every aspect of Plaintiff's job. FDD and Dar are completely beholden to Reyer due to the fact that their entire enterprise is based upon the fact that Reyer allows them to operate. Reyer has the ability to dictate to FDD and Dar any terms that it sees fit or it can pull its license. This is ability give Reyer supreme Control over FDD, Dar, and Plaintiff. Thus, Defendants herein should be considered joint employers under the FLSA.

Defendant contends that FDD and Dar are using "Reyer Parking" as a "d/b/a." There is no evidence anywhere in the record that reflects this. Neither Dar no Lieblich testified to this fact and upon information and belief, there is no "d/b/a" on file in the State or City of New York that reflects this. Moreover, the sign on the Premises and the claim checks, which are distributed, clearly read, "Reyer Parking Corp." and not "Reyer Parking." Thus, the Defendants herein are joint employers despite what Defendant may contend.

The Second Circuit has held that simply because an employer does not exercise its control does not relieve it from liability. Specifically, the Second Circuit held, "[i]n *RSR,* we noted that 'operational control' need not be exercised constantly for an individual to be liable under the FLSA: [Employer] status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence. The district court in this case appears to have relied on this language in stating that "[w]hat is critical is that Mr. Catsimatidis has [certain] powers to delegate" and that "[t]here is no area of Gristede's which is not subject to his control, whether [or not] he chooses to exercise it." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2nd Cir., 2013).

The instant case has shown that the following facts are undisputed. Plaintiff worked at the Premises, which were owned by 1872, a company solely owned by Lieblich. Reyer, a company solely owned by Lieblich, holds the only license, which allows the operation of a parking garage at the Premises. This license is non-transferrable and may only be used by Reyer. The sign on the Premises reads, "Reyer Parking Corp." and bears the license number held by Reyer. The Plaintiff and other co-workers were specifically given stamps and claim check cards with "Reyer Parking Corp." printed on them. The Plaintiff and other employees were told to answer the phones, "Reyer Parking." Upon information and belief, if one was to call the number for FDD, the person answering the phone would indicate the line belonged to "Reyer Parking." The Plaintiff and other workers were paid in cash and not given receipts, W-2's, or other legally required tax paperwork, which would otherwise bear the name of their employer. The alleged application filled out by the Plaintiff did not indicate the name of the company to which he was applying. Additionally, the tax returns for Reyer, which were produced during the course of discovery, clearly state that Reyer is operating as a "Parking Garage."[1]

On top of the undisputed facts, Plaintiff contends in his Complaint, Amended Complaint, and Declaration that he worked for "Reyer Parking Corp." The non-party witness Michael

---

[1] Due to the fact that this motion is being filed on ECF, a site to which the public has access, Plaintiff did not attach a copy of Defendant's tax returns to the instant motion to ensure privacy.

Mensah Abrampah contends that both he and the Plaintiff worked for "Reyer Parking Corp." It should not be lost on the Court that Reyer has not produced any documentary evidence to show that Plaintiff was not its employee. Reyer has only produced one self-serving declaration stating that it did not employee Plaintiff. In fact, FDD and Dar, though they have claimed to have employed Plaintiff, have also produce not one piece of evidence to show that they employed Plaintiff other than an affidavit and time sheets which were certainly made in one sitting **after** the instant litigation was commenced. *See,* **EXHIBIT "F."** Even if the Court were to accept these documents as true, they are far from compliance with the FLSA and New York State Labor Laws. This matter is so devoid of documents and evidence that if FDD and Dar did not claim to have employed Plaintiff, there would be no evidence that Plaintiff worked for them either. The documents which Plaintiff demanded, including corporate structuring of each Defendant, W-2's, and other time-keeping material have simply not been produced.

It should not be lost on the Court, that the Plaintiff, as well as a non-party witness employee who has been deposed herein, both of whom worked for the Defendants on site at their parking garage over the course of several years, are uncertain who their employer is. No one issued w-2s. Records required to be kept by employers pursuant to the FLSA and New York State Labor Laws have not been produced. Plaintiff submits that this is precisely what the Defendants intended. This is precisely what the FLSA and the New York State Labor Laws are designed to prevent; a corporate shell game designed to defeat an innocent Plaintiff from holding a flagrant violating employer from complying with the law and seeking justice when these violations are brought the attention to the Court. The reason so many issues of fact exist in this case is because the Defendants intentionally designed it to be that way. Reyer claims in its motion that the issue of who employed the Plaintiff should be an easy issue to resolve. The Plaintiff whole-heartedly agrees that this issue **should be** easy to determine. If the legally required documentation and records were kept, if the witness were not providing conflicting testimony, then this would have been an easy issue to resolve. The fact that this issue has not been easy to resolve shows that summary judgment is not appropriate herein.

There is no evidence for the Court to consider upon which to grant summary judgment. Thus, summary judgment in this matter is inappropriate. Defendant has annexed **no evidence** to its motion in support. He relies almost solely on out of context conversations had by Plaintiff's counsel and the Court, which were during discussions of speculation. These were preliminary conversations, which were held in Court before any meaningful discovery took place. Nothing contained in those transcripts is admissible evidence for the Court to consider a motion for summary judgment.

Plaintiff respectfully requests that the Court allow this matter to proceed to trial so that the jury can look passed the affidavits and hear the live testimony of each party in this matter. The jury will then be able to determine who is telling the truth and how to appropriately weight each party's witnesses and testimony.

                                                             Very truly yours,

                                                             *Michael T Carr*

                                                             Michael T Carr

Enclosures

c.      Edward S. Rudofsky, Esq.
         Robert A. Chapnick, Esq.