USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOSSOU GALLIE PINOVI a/k/a GALLIE
DOSSOU,

                              Plaintiff,

          -against-

FDD ENTERPRISES, INC. and ALI DAR,

                              Defendants.

MEMORANDUM DECISION
AND ORDER

13 Civ. 2800 (GBD) (KNF)

GEORGE B. DANIELS, United States District Judge:

This Court held a bench trial to adjudicate the claims of Plaintiff Gallie Dossou[1] against

Defendant Ali Dar.  Plaintiff alleges that Defendants FDD Enterprises, Inc. and Ali Dar violated

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and corresponding provisions

of the New York State Labor Law ("NYLL"), §§ 650 *et seq.*, by insufficiently compensating

Plaintiff for his work as a parking attendant at the garage that Defendants owned.

This Opinion constitutes this Court's findings of fact and conclusions of law pursuant to

Federal Rule of Civil Procedure 52.  This Court finds for Plaintiff and will award damages

consistent with this Opinion.

## PROCEDURAL HISTORY

Plaintiff brought this action against Gerald Lieblich and Reyer Parking Corp. on April 26,

2013.  (Complaint (ECF No. 1).)  Plaintiff was granted leave to amend the complaint to add new

defendants.  (So-ordered Letter Request (ECF No. 22).)  He filed the Amended Complaint on

October 31, 2013.  (*See* Am. Compl. (ECF No. 23).)  The original two defendants, Gerald Lieblich

and Reyer Parking Corp., were subsequently dismissed from this action: Gerald Lieblich was

dismissed by stipulation, dated March 20, 2014, and Reyer Parking Corp. was dismissed by order,

---

[1] At trial, Plaintiff identified himself as "Dossou Gallie Pinovi."

1

dated April 10, 2015, granting Defendant Reyer Parking Corp.'s motion for summary judgment. (*See* Stipulation (ECF No. 41) and Order (ECF No. 62), respectively.)  On May 21, 2015—five days before the bench trial was scheduled to commence on May 26, 2015—defense counsel informed this Court that Defendant FDD Enterprises, Inc. had filed for Chapter 11 bankruptcy protection in United States Bankruptcy Court for the Southern District of New York under case file number 15-11326.  (Letter dated May 21, 2015 (ECF No. 66).)  Accordingly, pursuant to 11 U.S.C. § 362(a)(1), this action was automatically stayed as to Defendant FDD Enterprises, Inc. However, this Court denied Defendants' request that the stay extend to non-debtor Defendant Dar. (*See* Letter dated May 21, 2015 (ECF No. 67); *see also Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (holding that a Section 362(a) stay does not automatically extend to a non-debtor).

From May 26 to May 27, 2015, this Court held a two-day bench trial to address whether Defendant Dar is liable to Plaintiff as his employer.  Plaintiff called three witnesses in his case-in-chief, including himself and Defendant Dar, and he offered two exhibits that were admitted into evidence.  Defendant Dar called only himself in his case-in-chief, and he offered three exhibits that were admitted into evidence.[2]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 52(a) provides, in relevant part, that a court conducting a bench trial "must find the facts specially and state its conclusions of law separately," and that "[j]udgment must be entered under Rule 58." Fed. R. Civ. P. 52(a)(1). Rule 52(a) further provides that such "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless

---

[2] Defense exhibits one through three consist of FDD Enterprises, Inc.'s 2011 through 2013 federal tax returns.

clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

## FINDINGS OF FACT

### *Undisputed Facts*

Certain facts are not in dispute. Plaintiff was employed by Defendant Dar as a parking garage attendant. Plaintiff filled out a document titled "Application for Employment," admitted as Plaintiff's Exhibit 2, that Defendant Dar gave him in October 2012. Plaintiff initially was paid $350 per week, and he was later paid at least $376 per week. Plaintiff was paid every week in cash. Plaintiff was not paid overtime and he received no spread-of-hours premium. Defendant Dar ultimately fired Plaintiff for allegedly stealing money from customers.[3]

### *The Duration of Plaintiff's Employment by Defendant Dar*

Plaintiff testified that he began work on January 3, 2011, and his last day was in March 2013, though he could not remember exactly when in March. Plaintiff also testified that he filled out the "Application for Employment" (Plaintiff's Exhibit 2) after working for Defendants for over a year. The date accompanying Plaintiff's signature on the application is October 16, 2012. Plaintiff testified that he was never shown time records when he worked for Defendants.

On direct examination, Defendant Dar had difficulty remembering Plaintiff's dates of employment. However, Defendant Dar stated that the time records he kept to track Plaintiff's hours (Plaintiff's Exhibit 1) were an accurate reflection of the total duration of Plaintiff's employment, the hours that he worked, and his rate of pay. According to Defendant Dar's time records, Plaintiff began work the week of October 13, 2012, and he worked through March 8,

---

[3] Plaintiff alleges in the Amended Complaint that he was fired in retaliation for complaining about his rate of pay. (Am. Compl. ¶ 21.)

2013. Defendant Dar also testified that Plaintiff was given the job application on October 13, 2012, before he started working, but that he signed it three days after he began working on October 16, 2012.

The third individual to testify, Michael Mensah Abrampah, is also a former employee of Defendant Dar. Abrampah testified that he began working for Defendants on January 15, 2010. Abrampah also testified that he met Plaintiff in mid-January 2011 at work while they were both employees of Defendants. He testified further that Plaintiff already worked for Defendants before he met Plaintiff. Defendant Dar did not remember whether Abrampah or Plaintiff began working for him first. Unlike Plaintiff, Abrampah testified that he was never asked to fill out a job application. Abrampah also testified that he was never shown any time records.

This Court credits Defendant Dar's testimony that Plaintiff's last day of employment was March 8, 2013, which is consistent with Plaintiff's testimony. Defendant Dar's testimony that Plaintiff was not employed before October 13, 2012, however, is not credible. His testimony, and the purported time records, are contradicted by Plaintiff's testimony and that of Abrampah. Based on Plaintiff's testimony coupled with the corroborating testimony of Abrampah, whom this Court also finds to be credible, Plaintiff began working as Defendants' employee on January 3, 2011.

Thus, Plaintiff was employed by Defendants from January 3, 2011 through March 8, 2013.

*Plaintiff's Hours*

Plaintiff testified that he worked twelve hours per day for seven days each week, for a total of eighty-four hours per week. Plaintiff was not given a lunch break during his shift. Plaintiff also testified that he was given one day off each month. Although Defendant Dar said Plaintiff could break for thirty minutes to eat, Plaintiff said he was still on duty and was interrupted for work-related tasks. Abrampah similarly testified that Defendants' employees were not given a lunch

break. In addition, Abrampah testified that the shifts were twelve hours long. Thus, based on Plaintiff's testimony, as corroborated by Abrampah, he worked approximately 348 hours each month, assuming a thirty-day month, and he worked 4,236 hours in a year.[4]

On direct examination, Defendant Dar insisted that Plaintiff only worked five days (Monday through Friday) and forty hours in a week; however, he also stated that Plaintiff's hours were 8 AM to 5 PM (a nine-hour day). He insisted that Plaintiff was allowed thirty minutes for a lunch break, but acknowledged that Plaintiff could not leave the parking garage for lunch. Defendant Dar conceded that Plaintiff was not entitled to vacation. He also testified that he kept records of Plaintiff's hours as reflected in Plaintiff's Exhibit 1. Defendant Dar testified that he showed these records to Plaintiff while Plaintiff was his employee. His recordkeeping consisted of writing Plaintiff's hours on a piece of scrap paper contemporaneously, subsequently recording those hours on the time records on a weekly basis, and then discarding the scrap paper. According to the records, Plaintiff worked from exactly 9 AM to 5 PM, Monday through Friday. Not only do these records contradict the testimony of Plaintiff and Abrampah that employees worked twelve-hour shifts, they also contradict the testimony of Defendant Dar that Plaintiff worked from 8 AM to 5 PM. Defendant Dar further testified that he had three employees during the relevant time who each worked only eight hours per day and five days per week, but that the garage was open twenty-four hours per day and seven days per week. When asked to explain who covered the unaccounted-for hours, Defendant Dar testified that sometimes a "reliever" would cover those hours, and that sometimes he would cover some hours. Defendant Dar did not keep track of his own time.

---

[4] Twelve hours per day, less one twelve-hour shift per month, for a thirty-day month: $(12 \times 30) - 12 = 348$ hours/month. Twelve hours per day, less one twelve-hour shift per month, for a total of 365 days: $(12 \times 365) - (12 \times 12) = 4,236$ hours/year.

Defendant Dar's records of employment and his attendant testimony are not credible. Thus, this Court credits Plaintiff's testimony regarding his hours, including that he worked twelve hours per day, which is supported by Abrampah's testimony. Thus, Plaintiff worked for Defendant Dar from January 3, 2011 through March 8, 2013, which is 2 years, 2 months and 6 days (or 796 days), before accounting for vacation. Accounting for the one day off per month, Plaintiff worked approximately 769 days or 114 weeks for Defendant Dar.

### *Plaintiff's Pay*

Plaintiff testified that he was paid $350 per week, until a point in time when he began receiving $400 per week. He received his pay in cash every Friday. He testified that he was never given any paper documentation reflecting his pay. This is generally consistent with Abrampah's testimony regarding how much Abrampah was paid and when.

When asked about Plaintiff's pay on direct examination, Defendant Dar referred Plaintiff's counsel to the time records and could not provide a figure for Plaintiff's pay. According to the time records, Plaintiff was paid $350 per week at a rate of $8.75 per hour, until January 5, 2013, when he began getting paid at a rate of $9.40 per hour for a weekly salary of $376. Crediting Plaintiff's testimony, this Court concludes that, on average, Plaintiff was paid $375 per week for 114 weeks.

### DETERMINATIONS

Plaintiff alleges that due to Defendant Dar's violations of the FLSA and NYLL, he is entitled to (1) backpay in the amount of the legally sufficient minimum wage; (2) overtime compensation; (3) the "spread of hours" premium required under the NYLL; (4) liquidated damages; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

### I.    Damages Period

Plaintiff's action is timely under both the FLSA and NYLL.  The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The statute of limitations under the NYLL is six years.  N.Y. Lab. Law §§ 198(3), 663(3).

Plaintiff has met his burden of demonstrating that Defendant Dar's violations of the FLSA were willful.  An employer willfully violates the FLSA where he "either knew or showed reckless disregard for the matter of whether [his] conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "Recklessness is defined as, at the least, an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950 (DLC), 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (citation omitted).  Defendant Dar was paying Plaintiff on average less than $5 per hour to work daily twelve-hour shifts for over two years.  His representations to this Court and his time records regarding Plaintiff's hours are not credible.  He deliberately—or at a minimum, recklessly—disregarded his FLSA wage obligations of which he was aware.

Thus, all of Plaintiff's claims accrued within the limitations periods under the FLSA and the NYLL.

### II.    Regular Rate of Pay and Actual Damages

As the parties stipulated, the applicable minimum wage rate during the relevant period was $7.25 per hour.  (*See* Joint Pretrial Order ¶ 4); *see also* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652.  The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.  *See, e.g., Perez v. Platinum Plaza 400*

*Cleaners, Inc.*, No. 12 Civ. 9353 (PAC), 2015 WL 1881080, at \*2 (S.D.N.Y. Apr. 24, 2015) ("Defendants have not overcome the presumption that a flat weekly salary is intended to compensate employees for forty hours of work per week."); *Amaya v. Superior Tile & Granite Corp.*, 10 Civ. 4525 (PGG), 2012 WL 130425, at \*9 (S.D.N.Y. Jan. 17, 2012) ("An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and Labor Law if there is an explicit understanding between the employer and employee as to regular and overtime rates."); *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) ("Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours.") (citations omitted).

Here, Plaintiff was paid a weekly rate of approximately $375. Defendant Dar offers no evidence that there was any agreement or understanding between Plaintiff and Defendants that this salary was intended to cover overtime hours. In fact, Defendant Dar testified that Plaintiff's weekly salary was only intended to cover forty hours per week. Thus, Defendant Dar paid Plaintiff approximately $9.38 per hour, which is above the minimum wage required under the FLSA and the NYLL. Plaintiff therefore is not entitled to recover for unpaid minimum wage payments.

## III.    Overtime

Under the FLSA and the NYLL, Plaintiff must be paid one and one-half times his regular hourly rate for every hour worked over forty hours per week. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes. R. & Regs. Tit. 12 § 142-2.2. Thus, Plaintiff is entitled to approximately $14 for every hour beyond forty hours that he worked in a given week as reflected in the below Table A. Based on Plaintiff's credible testimony, he is therefore entitled to forty-four hours of overtime pay for a

8

total of $618.75 for each full week that he worked, and thirty-two hours of overtime pay for a total

of $450.00 for each week that he took his monthly vacation day.[5]  However, he is not entitled to

double-recover this overtime pay under both statutes.  *See, e.g., Cao v. Wu Liang Ye Lexington

Rest., Inc.*, 08 Civ. 3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010).

## IV.    Spread of Hours

Plaintiff also contends that he is entitled to "spread-of-hours" pay.  Under the NYLL, an

employer must give an employee "one hour's pay at the basic minimum hourly rate, *in addition to

the minimum wage*" for each day in which "the spread of hours [worked] exceeds 10 hours."  N.Y.

Comp. Codes R. & Regs. Tit. 12, § 142-2.4 (emphasis added).  "[R]ecent case law has been nearly

unanimous that the spread-of-hours requirement extends only to workers paid at the minimum-

wage level." *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG), 2015 WL 305362,

at *16 (S.D.N.Y. Jan. 23, 2015) (citing cases).  At $9.38 per hour, Plaintiff's hourly wage was

greater than the $7.25 per hour minimum wage.  Therefore, Plaintiff is not entitled to recover

"spread of hours" pay because the "explicit reference to 'minimum wage' in § 142-2.4 indicates

that such a provision is properly limited to those employees who receive only the minimum

compensation required by law." *Id.* at *17 (quoting *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp.

2d 592, 601 (S.D.N.Y. 2011)).

## V.    Liquidated Damages

Under the FLSA, courts are required to award liquidated damages in an amount equal to

actual damages unless the employer demonstrates that it acted in "good faith."  29 U.S.C. § 216(b)

(Employers who violate the FLSA "shall be liable . . . in the amount of their unpaid minimum

---

[5] Forty-four hours is calculated by taking the difference between the eighty-four total hours Plaintiff
worked in a regular week and the forty hours for which he was compensated at the rate of approximately
$375 per week.

wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages"); *see also Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260) (A district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA."). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Reich v. S. New Engl. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)).

During the time period in question, the NYLL similarly imposed liquidated damages unless the defendant could "prove[] a good faith basis to believe that its underpayment of wages was in compliance with the law." *See* N.Y. Lab. Law §§ 198(1-a), 663(1). Prior to April 9, 2011, however, the NYLL imposed liquidated damages in an amount equal to twenty-five percent of the total amount of wages due to plaintiff. The NYLL was amended, effective April 9, 2011, to be more in line with its FLSA counterpart, and it now provides for liquidated damages "equal to one hundred percent of the total of such underpayments found to be due." N.Y. Lab. Law § 663(1).

Defendant Dar has provided no credible evidence that he had a good faith basis to believe that he was complying with the FLSA or the NYLL. The only evidence he provided is the purported time records, which—as discussed—contradict the testimony of all three witnesses, including portions of Defendant Dar's testimony. In fact, the purported time records are direct evidence of his awareness of his obligations under the law. Plaintiff is therefore entitled to liquidated damages.

The remaining question is whether Plaintiff may be awarded cumulative liquidated damages under both statutes. Courts in this Circuit are split on this issue. The prevailing view remains that recovery under both is proper because the statutes serve different purposes. *See, e.g.,* *Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382 (PAC), 2015 WL 1000034, at \*3 (S.D.N.Y. Mar. 5, 2015) ("While a split of authority exists on whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations during the same time period, the majority of courts in the Second Circuit allow for the simultaneous recovery of both forms of liquidated damages.") (citations omitted); *Easterly v. Tri-Star Transp. Corp.*, No. 11 CV 6365 (VB), 2015 WL 337565, at \*7 (S.D.N.Y. Jan. 23, 2015) ("Adhering to th[e] majority view" and recommending that "Plaintiff be awarded liquidated damages under both federal and New York law based on her recovery for unpaid wages"); *Tackie v. Keff Enters. LLC*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at \*5 (S.D.N.Y. Sept. 16, 2014) (holding that double-recovery for liquidated damages is permissible because "the Supreme Court has specified that liquidated damages under [the] FLSA are compensatory . . . but the Second Circuit has held that liquidated damages under the NYLL are punitive") (citations omitted); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008) ("[A] prevailing plaintiff who can justify both [FLSA] liquidated damages and state-law [liquidated] damages should be eligible to recover both, since they . . . serve fundamentally different purposes.") (citations and internal quotation marks omitted).

However, a number of courts have challenged whether this "different purposes" rationale is persuasive after the April 9, 2011 amendment to the NYLL, which renders the liquidated damages provisions of the FLSA and the NYLL nearly identical. *See, e.g., Inclan v. N.Y. Hospitality Grp., Inc.*, No. 12 Civ. 4498 (NRB), 2015 WL 1399599, at \*12 (S.D.N.Y. Mar. 26, 2015) ("Even assuming there [was] once a plausibly substantive distinction between liquidated

11

damages under the FLSA and NYLL, the recent amendments to the NYLL have undermined the basis for such a distinction."); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012) (Post-amendment of the NYLL's liquidated damages statute, the NYLL and FLSA "provide for essentially identical remedies with respect to liquidated damages, [and] it is harder to argue that they are designed to compensate a plaintiff for disparate harms").[6]

Here, this Court need not choose a side in this debate because Plaintiff's proposed damages calculations only request liquidated damages consistent with the FLSA. (*See* Schedule A to the Joint Pretrial Order.) Thus, this Court awards liquidated damages in the amount of unpaid overtime wages as reflected in Table A.

## VI. Interest

### a. Prejudgment Interest

"[P]rejudgment interest may not be awarded in addition to liquidated damages" under the FLSA. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (citations omitted). Under New York law, however, prejudgment interest may be awarded in addition to liquidated damages. *See Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n. 7 (2d Cir. 2011); *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999); *see also* N.Y. C.P.L.R. § 5001(a). "Prejudgment interest is calculated [ ] on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Fermin v. Las Delicias Peruanas Rest., Inc.*, No. 14-CV-0559 (RRM)(VMS), 2015 WL 1285960, at *25 (E.D.N.Y. Mar. 19, 2015) (citation omitted).

---

[6] Even before this amendment, some courts in this Circuit refused to allow recovery under both statutes due to concerns that it provided plaintiffs with a windfall. *See, e.g., Chun Jie Yin v. Kim*, No. 07-CV-1236 (DLI)(JO), 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008) ("[T]o the extent the 'liquidated damages' available under the FLSA can properly be characterized as compensation, it is apparent that the 'liquidated damages' available under the state statute compensate[] the exact same harm—namely, the harm caused by the defendant's culpable state of mind.").

Accordingly, Plaintiff is only entitled to prejudgment interest on unpaid state wages or overtime for which FLSA liquidated damages were not awarded. *See Berrezueta v. Royal Crown Pastry Shop, Inc.*, 12-CV-4380 (FB)(RML), 2013 WL 6579799, at \*6 (E.D.N.Y. Dec. 16, 2013). Because Plaintiff has been awarded liquidated damages on all of his unpaid overtime wages under the FLSA, he is not entitled to recover prejudgment interest.

### b. Post-Judgment Interest

Plaintiff requests that post-judgment interest be awarded. Post-judgment interest is mandatory on awards in civil cases. *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). Accordingly, Plaintiff is entitled to post-judgment interest calculated pursuant to 28 U.S.C. § 1961(b).

### CONCLUSION

In light of Defendant Dar's willful violations of the FLSA and NYLL, Plaintiff is entitled to unpaid overtime under the FLSA and NYLL in the amount of $65,643.75, and liquidated damages under the FLSA in the amount of $65,643.75, for a total of $131,287.50. Plaintiff is also entitled to post-judgment interest after the Clerk of the Court has entered the judgment in this case.[7]

Dated: New York, New York
       July **8**, 2015

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

---

[7] This case is referred to Magistrate Judge Fox for a determination of reasonable attorneys' fees upon application of Plaintiff's counsel.

13

| TABLE A | |
|---|---|
| Weeks | 114 |
| Days | 769 |
| Hours | 9,228 |
| Overtime Hours | 4,668 |
| Overtime Rate | $14.0625 |
| Total Wages Lost (Overtime) | $65,643.75 |
| Liquidated Damages | $65,643.75 |
| **TOTAL Damages Owed** | **$131,287.50** |